

**PROMISSORY NOTE**

$3,400,000.00                                                     February _2_, 2005

**FOR VALUE RECEIVED, BETHANY COURT, LLC,** a Delaware limited liability company (the **"Borrower"**), with an address at 4260 Highway One, Suite 6, Rehoboth Beach, Delaware 19971, promises, under seal, to pay to the order of **CITIZENS BANK** (the **"Bank"**), in lawful money of the United States of America in immediately available funds at its offices located at 919 N. Market Street, Suite 800, Wilmington, Delaware 19801, or at such other location as Bank may designate from time to time, the principal sum of **THREE MILLION FOUR HUNDRED THOUSAND DOLLARS** ($3,400,000.00) (**"Loan"**) or so much thereof as shall have been advanced under that certain Loan Agreement dated of even date herewith between Borrower and Bank (as amended, modified or renewed from time to time, the **"Agreement"**), together with interest accruing from the date of initial advance on the outstanding principal balance hereof, as provided below:

## 1.    Definitions.

a.    **"Agreement of Sale"** has the meaning ascribed to such term in the Agreement.

b.    **"Business Day"** means any day which is neither a Saturday or Sunday nor a legal holiday on which commercial banks are authorized or required to be closed in Wilmington, Delaware.

c.    **"Interest Period"** means initially, the period commencing as of the date of this Note (the **"Start Date"**) and ending on the numerically corresponding date one month later, and thereafter each one month period ending on the day of such month that numerically corresponds to the State Date. If an Interest Period is to end in a month for which there is no day that numerically corresponds to the Start Date, the Interest Period will end on the last day of such month.

d.    **"LIBOR Rate"** means relative to any Interest Period, the offered rate for delivery in two London Banking Days (as defined below) of deposits of U.S. Dollars which the British Bankers' Association fixes as its LIBOR rate and which appears on the Telerate Page 3750 as of 11:00 a.m. London time on the day on which the Interest Period commences, and for a period approximately equal to such Interest Period (i.e., the "30-day" LIBOR Rate). If the first day of any Interest Period is not a day which is both a (i) Business Day, and (ii) a day on which US dollar deposits are transacted in the London interbank market (a "London Banking Day"), the LIBOR Rate shall be determined in reference to the next preceding day which is both a Business Day and a London Banking Day. If for any reason the LIBOR Rate is unavailable and/or the Bank is unable to determine the LIBOR Rate for any Interest Period, the Loan shall accrue interest at the Prime Rate.

e.    **"Prime Rate"** means the annual interest rate publicly announced by Bank from time to time as its prime rate. The Prime Rate is determined from time to time by Bank as a means of pricing some loans to its borrowers. The Prime Rate is not tied to any external rate of interest or index, and does not necessarily reflect the lowest rate of interest actually charged by Bank to any particular class or category of customers. If and when the Prime Rate changes, the rate of interest with respect to any amounts hereunder to which the Prime Rate applies will change automatically without notice to Borrower, effective on the date of any such change.

## 2.    Interest and Payment Terms.

a.    **Rate of Interest.** Interest on the outstanding principal amount of the Loan shall accrue at a rate equal to the LIBOR Rate for such Interest Period plus two hundred seventy five basis points (2.75%) per annum. On the Preliminary Site Plan Approval Date (as defined in the Agreement), the rate of interest will be reduced to LIBOR Rate for such Interest Period plus two hundred fifty basis points (2.50%) per annum. Interest shall be calculated based on a 360-day year and the actual number of days elapsed.

b.    **Payment Terms.** Commencing on March 1, 2005, and on the first day of each consecutive month thereafter, a payment shall be made equal to the sum of interest on the outstanding principal balance. The entire unpaid principal amount hereof, together with accrued and unpaid interest thereon and all other amounts payable hereunder, shall be due and payable in full on February _2_ , 2007 (the **"Maturity Date"**).

If any payment under this Note shall become due on a day other than a Business Day, such payment shall be made on the next succeeding business day and such extension of time shall be included in computing interest in connection with such payment. The Borrower hereby authorizes the Bank to charge the Borrower's deposit account at the Bank for any payment when due hereunder. Payments received will be applied to charges, fees and expenses (including attorneys' fees), accrued interest and principal in any order the Bank may choose, in its sole discretion.

3.    **Late Payments; Default Rate.** If the Borrower fails to make any payment of principal, interest or other amount coming due pursuant to the provisions of this Note within ten (10) calendar days of the date due and payable, the Borrower also shall pay to the Bank a late charge equal to five percent (5.0%) of the amount of such payment (the **"Late Charge"**). Such ten (10) day period shall not be construed in any way to extend the due date of any such payment. Upon maturity, whether by acceleration, demand or otherwise, and at the Bank's option upon the occurrence of any Event of Default (as hereinafter defined) and during the continuance thereof, this Note shall bear interest at a rate that shall be five percentage points (5.0%) in excess of the Interest Rate in effect from time to time under this Note but not more than the maximum rate allowed by law (the **"Default Rate"**). The Default Rate shall continue to apply whether or not judgment shall be entered on this Note. Both the Late Charge and the Default Rate are imposed as liquidated damages for the purpose of defraying the Bank's expenses incident to the handling of delinquent payments, but are in addition to, and not in lieu of, the Bank's exercise of any rights and remedies hereunder, under the other Loan Documents or under applicable law, and any fees and expenses of any agents or attorneys which the Bank may employ. In addition, the Default Rate reflects the increased credit risk to the Bank of carrying a loan that is in default.

-2-

The Borrower agrees that the Late Charge and Default Rate are reasonable forecasts of just compensation for anticipated and actual harm incurred by the Bank, and that the actual harm incurred by the Bank cannot be estimated with certainty and without difficulty.

**4.     Prepayment.** The principal amount of this Note may be prepaid in whole or in part at any time, and from time to time, without premium or penalty. Any prepayment shall include accrued and unpaid interest to the date of prepayment on the principal amount prepaid and all other sums due and payable hereunder.

**5.     Other Loan Documents.** This Note is issued in connection with a Mortgage and Security Agreement given by Borrower to Bank of even date herewith (the **"Mortgage"**), the Agreement, and the other agreements and documents executed in connection therewith or referred to therein, the terms of which are incorporated herein by reference (as amended, modified or renewed from time to time, collectively the **"Loan Documents"**), and is secured by the property described in the Mortgage (the **"Property"**) and by such other collateral as previously may have been or may in the future be granted to the Bank to secure this Note.

**6.     Events of Default.** The occurrence of any of the following events will be deemed to be an **"Event of Default"** under this Note: (i) the nonpayment of any principal, interest or other indebtedness under this Note when due and such nonpayment shall continue for more than five (5) Business Days after written notice of such failure shall have been given by Bank to Borrower; provided, however, Bank shall not be required to provide Borrower such notice or cure more than twice in any calendar year; (ii) the occurrence of any event of default or default and the lapse of any notice or cure period under any Loan Document or any other debt, liability or obligation to the Bank of any Obligor; (iii) the filing by or against any Obligor of any proceeding in bankruptcy, receivership, insolvency, reorganization, liquidation, conservatorship or similar proceeding (and, in the case of any such proceeding instituted against any Obligor, such proceeding is not dismissed or stayed within 45 days of the commencement thereof, provided that the Bank shall not be obligated to advance additional funds during such period); (iv) any assignment by any Obligor for the benefit of creditors, or any levy, garnishment, attachment or similar proceeding is instituted against any property of any Obligor held by or deposited with the Bank; (v) the commencement of any foreclosure or forfeiture proceeding, execution or attachment against any collateral securing the obligations of any Obligor to the Bank; (vi) the entry of a final judgment against any Obligor and the failure of such Obligor to discharge the judgment within ten (10) days of the entry thereof; (vii) any Obligor ceases doing business as a going concern; (viii) the revocation or attempted revocation, in whole or in part, of any guarantee by any Guarantor; (ix) the death, incarceration, indictment or legal incompetency of any individual Obligor or the death, incarceration, indictment or legal incompetency of any individual member of Borrower; (xi) any representation or warranty made by any Obligor to the Bank in any Loan Document, or any other documents now or in the future evidencing or securing the obligations of any Obligor to the Bank, is false, erroneous or misleading in any material respect; or (xii) any Obligor's failure to observe or perform any covenant or other agreement with the Bank contained in any Loan Document or any other documents now or in the future evidencing or securing the obligations of any Obligor to the Bank, and the continuance of such failure for a period of thirty (30) days after written notice thereof shall have been given to such Obligor. As used herein, the term **"Obligor"** means any Borrower and any Guarantor, and

-3-

the term **"Guarantor"** means any guarantor of the Borrower's obligations to the Bank existing on the date of this Note or arising in the future.

Upon the occurrence and the continuance of an Event of Default: (a) the Bank shall be under no further obligation to make advances hereunder; (b) if an Event of Default specified in clause (iii) or (iv) above shall occur, the outstanding principal balance and accrued interest hereunder together with any additional amounts payable hereunder shall be immediately due and payable without demand or notice of any kind; (c) if any other Event of Default shall occur, the outstanding principal balance and accrued interest hereunder together with any additional amounts payable hereunder, at the Bank's option and without demand or notice of any kind, may be accelerated and become immediately due and payable; (d) at the Bank's option, this Note will bear interest at the Default Rate from the date of the occurrence of the Event of Default; and (e) the Bank may exercise from time to time any of the rights and remedies available under the Loan Documents or under applicable law.

7.      **Power to Confess Judgment.  The Borrower hereby empowers any attorney of any court of record, after the occurrence of any Event of Default hereunder, to appear for the Borrower and, with or without complaint filed, confess judgment, or a series of judgments, against the Borrower in favor of the Bank or any holder hereof for the entire principal balance of this Note, all accrued interest and all other amounts due hereunder, together with costs of suit and an attorney's commission equal to twenty percent (20%) of such principal and interest (provided, however, that Bank shall only seek to recover those reasonable attorney's fees incurred by it from time to time), and for doing so, this Note or a copy verified by affidavit shall be a sufficient warrant.  The Borrower hereby forever waives and releases all errors in said proceedings and all rights of appeal and all relief from any and all appraisement, stay or exemption laws of any state now in force or hereafter enacted.  Interest on any such judgment shall accrue at the Default Rate.**

**No single exercise of the foregoing power to confess judgment, or a series of judgments, shall be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void, but the power shall continue undiminished and it may be exercised from time to time as often as the Bank shall elect until such time as the Bank shall have received payment in full of the debt, interest and costs.  Notwithstanding the attorney's commission provided for in the preceding paragraph (which is included in the warrant for purposes of establishing a sum certain), the amount of attorneys' fees that the Bank may recover from the Borrower shall not exceed the actual attorneys' fees incurred by the Bank.**

8.      **Right of Setoff.**  In addition to all liens upon and rights of setoff against the Borrower's money, securities or other property given to the Bank by law, the Bank shall have, with respect to the Borrower's obligations to the Bank under this Note and to the extent permitted by law, a contractual possessory security interest in and a contractual right of setoff against, and the Borrower hereby assigns, conveys, delivers, pledges and transfers to the Bank all of the Borrower's right, title and interest in and to, all of the Borrower's deposits, moneys, securities and other property now or hereafter in the possession of or on deposit with, or in transit to, the Bank or any other direct or indirect subsidiary of Citizens Bank, whether held in a general or

-4-

special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding, however, all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to the Borrower. Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of an Event of Default hereunder without any action of the Bank, although the Bank may enter such setoff on its books and records at a later time.

**9.     Miscellaneous.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing (except as may be agreed otherwise above with respect to borrowing requests) and will be effective upon receipt. Such notices and other communications may be hand-delivered, sent by facsimile transmission with confirmation of delivery and a copy sent by first-class mail, or sent by nationally recognized overnight courier service, to the addresses for the Bank and the Borrower set forth above or to such other address as either may give to the other in writing for such purpose. No delay or omission on the Bank's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will the Bank's action or inaction impair any such right or power. No modification, amendment or waiver of any provision of this Note nor consent to any departure by the Borrower therefrom will be effective unless made in a writing signed by the Bank. The Borrower agrees to pay on demand, to the extent permitted by law, all costs and expenses incurred by the Bank in the enforcement of its rights in this Note and in any security therefor, including without limitation reasonable fees and expenses of the Bank's counsel. If any provision of this Note is found to be invalid by a court, all the other provisions of this Note will remain in full force and effect. The Borrower and all other makers and indorsers of this Note hereby forever waive presentment, protest, notice of dishonor and notice of non-payment. The Borrower also waives all defenses based on suretyship or impairment of collateral. If this Note is executed by more than one Borrower, the obligations of such persons or entities hereunder will be joint and several. This Note shall bind the Borrower and its heirs, executors, administrators, successors and assigns, and the benefits hereof shall inure to the benefit of the Bank and its successors and assigns; provided, however, that the Borrower may not assign this Note in whole or in part without the Bank's written consent and the Bank at any time may assign this Note in whole or in part.

This Note has been delivered to and accepted by the Bank and will be deemed to be made in the State where the Bank's office indicated above is located. **This Note will be interpreted and the rights and liabilities of the Bank and the Borrower determined in accordance with the laws of the State of Delaware, excluding its conflict of laws rules.** The Borrower hereby irrevocably consents to the exclusive jurisdiction of any state or federal court in the county or judicial district where the Bank's office indicated above is located; provided that nothing contained in this Note will prevent the Bank from bringing any action, enforcing any award or judgment or exercising any rights against the Borrower individually, against any security or against any property of the Borrower within any other county, state or other foreign or domestic jurisdiction. The Borrower acknowledges and agrees that the venue provided above is the most convenient forum for both the Bank and the Borrower. The Borrower waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Note.

-5-

**10.    WAIVER OF JURY TRIAL.** The Borrower irrevocably waives any and all rights the Borrower may have to a trial by jury in any action, proceeding or claim of any nature relating to this Note, any documents executed in connection with this Note or any transaction contemplated in any of such documents. The Borrower acknowledges that the foregoing waiver is knowing and voluntary.

The Borrower acknowledges that it has read and understood all the provisions of this Note, including the confession of judgment and the waiver of jury trial, and has been advised by counsel as necessary or appropriate.

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

WITNESS:                                    **BETHANY COURT, LLC,**
                                            a Delaware limited liability company,

                                            By: _____
                                                Mark G. McGreevy
                                                Authorized Member

## GUARANTY AND SURETYSHIP AGREEMENT

**THIS GUARANTY AND SURETYSHIP AGREEMENT** (this **"Guaranty"**) is made and entered into as of this $\underline{2}$ day of February, 2005, by **MARK G. MCGREEVY AND CAROL E. MCGREEVY** (collectively, the **"Guarantor"**), each with an address at 109 Kelly Drive, Chadds Ford, Pennsylvania 19317, to induce **CITIZENS BANK** (the **"Bank"**), with an address at 919 N. Market Street, Suite 800, Wilmington, Delaware 19801 to make, extend or renew loans, advances, credit, or other financial accommodations to **BETHANY COURT, LLC,** a Delaware limited liability company (the **"Borrower"**), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

**1.    Guaranty of Obligations.** The Guarantor hereby guarantees, and becomes surety for, the prompt payment and performance of all loans, advances, debts, liabilities, obligations, covenants and duties owing by the Borrower to the Bank, of any kind or nature, present or future (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to the Borrower, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether direct or indirect (including those acquired by assignment or participation), absolute or contingent, joint or several, due or to become due, now existing or hereafter arising; whether or not evidenced by any note, guaranty or other instrument, whether arising under any agreement, instrument or document, whether or not for the payment of money, whether arising by reason of an extension of credit, opening of a letter of credit, loan, equipment lease or guarantee, under any interest or currency swap, future, option or other interest rate protection or similar agreement, or in any other manner, whether arising out of overdrafts on deposit or other accounts or electronic funds transfers (whether through automated clearing houses or otherwise) or out of the Bank's non-receipt of or inability to collect funds or otherwise not being made whole in connection with depository transfer check or other similar arrangements; and any amendments, extensions, renewals or increases and all costs and expenses of the Bank (including reasonable attorneys' fees and expenses) incurred in the documentation, negotiation, modification, enforcement, collection or otherwise in connection with any of the foregoing (collectively, the **"Obligations"**).    If the Borrower defaults under any such Obligations, the Guarantor will pay the amount due to the Bank.

**2.    Completion Obligations.** In addition to the matters set forth above, the Guarantor, as part of the Obligations defined above, hereby:

a.    unconditionally guarantees to the Bank that the construction of the Project will be fully completed in substantial accordance with the Plans and Specifications, free and clear of all claims and liens (including but not limited to mechanics' liens) against the Premises and the Project and agrees that the Guarantor will make available any funds in excess of the Loan necessary to pay for the completion of construction not paid by Borrower and will indemnify the Bank and hold the Bank harmless against the claims of any unpaid contractors, sub contractors, laborers and suppliers; and

b. guarantees and becomes surety for the substantial completion of construction in accordance with the terms of, on or before the completion date set forth in, the Loan Agreement between the Bank and the Borrower dated of even date herewith (the **"Agreement"**), and if construction is not so completed free of all liens and claims on or before that date, the Guarantor will pay to the Bank on demand all amounts which the Bank shall have theretofore advanced under the Agreement between and the promissory notes of the Borrower of even date herewith which evidences the Loan made pursuant to the Agreement.

3. **Nature of Guaranty; Waivers.** This is a guaranty of payment and not of collection and the Bank shall not be required, as a condition of the Guarantor's liability, to make any demand upon or to pursue any of its rights against the Borrower, or to pursue any rights which may be available to it with respect to any other person who may be liable for the payment of the Obligations.

This is an absolute, unconditional, irrevocable and continuing guaranty and will remain in full force and effect until all of the Obligations have been indefeasibly paid in full, and the Bank has terminated this Guaranty. This Guaranty will remain in full force and effect even if there is no principal balance outstanding under the Obligations at a particular time or from time to time. This Guaranty will not be affected by any surrender, exchange, acceptance, compromise or release by the Bank of any other party, or any other guaranty or any security held by it for any of the Obligations, by any failure of the Bank to take any steps to perfect or maintain its lien or security interest in or to preserve its rights to any security or other collateral for any of the Obligations or any guaranty, or by any irregularity, unenforceability or invalidity of any of the Obligations or any part thereof or any security or other guaranty thereof. The Guarantor's obligations hereunder shall not be affected, modified or impaired by any counterclaim, set-off, deduction or defense based upon any claim the Guarantor may have against the Borrower or the Bank, except payment or performance of the Obligations.

Except for notices required hereunder or under any documents evidencing, securing or guarantying the Obligations, notice of acceptance of this Guaranty, notice of extensions of credit to the Borrower from time to time, notice of default, diligence, presentment, notice of dishonor, protest, demand for payment, and any defense based upon the Bank's failure to comply with the notice requirements of the applicable version of Uniform Commercial Code § 9-611 are hereby waived. The Guarantor waives all defenses based on suretyship or impairment of collateral.

The Bank at any time and from time to time, without notice to or the consent of the Guarantor, and without impairing or releasing, discharging or modifying the Guarantor's liabilities hereunder, may (a) change the manner, place, time or terms of payment or performance of or interest rates on, or other terms relating to, any of the Obligations; (b) renew, substitute, modify, amend or alter, or grant consents or waivers relating to any of the Obligations, any other guaranties, or any security for any Obligations or guaranties; (c) apply any and all payments by whomever paid or however realized including any proceeds of any collateral, to any Obligations of the Borrower in such order, manner and amount as the Bank may determine in its sole

-2-

discretion; (d) settle, compromise or deal with any other person, including the Borrower or the Guarantor, with respect to any Obligations in such manner as the Bank deems appropriate in its sole discretion; (e) substitute, exchange or release any security or guaranty; or (f) take such actions and exercise such remedies hereunder as provided herein.

4. **Repayments or Recovery from the Bank.** If any demand is made at any time upon the Bank for the repayment or recovery of any amount received by it in payment or on account of any of the Obligations and if the Bank repays all or any part of such amount by reason of any judgment, decree or order of any court or administrative body or by reason of any settlement or compromise of any such demand, the Guarantor will be and remain liable hereunder for the amount so repaid or recovered to the same extent as if such amount had never been received originally by the Bank. The provisions of this section will be and remain effective notwithstanding any contrary action which may have been taken by the Guarantor in reliance upon such payment, and any such contrary action so taken will be without prejudice to the Bank's rights hereunder and will be deemed to have been conditioned upon such payment having become final and irrevocable.

5. **Financial Statements.** Unless compliance is waived in writing by the Bank or until all of the Obligations have been paid in full, the Guarantor will promptly submit to the Bank such information relating to the Guarantor's affairs (including but not limited to annual financial statements and tax returns for the Guarantor, as set forth in the Loan Agreement between Bank and Borrower, dated the date hereof) or any security for the Guaranty as the Bank may reasonably request.

6. **Financial Covenant.** Borrower, Guarantor and all other guarantors of the Obligations shall maintain combined unencumbered liquid assets (cash and marketable securities) in a minimum amount of not less than $1,000,000.00. Guarantor and all other guarantors of the Obligations shall maintain a minimum combined net worth of not less than $40,000,000.00. The foregoing requirements shall be tested annually based on financial information requested by Bank.

7. **Enforceability of Obligations.** No modification, limitation or discharge of the Obligations arising out of or by virtue of any bankruptcy, reorganization or similar proceeding for relief of debtors under federal or state law will affect, modify, limit or discharge the Guarantor's liability in any manner whatsoever and this Guaranty will remain and continue in full force and effect and will be enforceable against the Guarantor to the same extent and with the same force and effect as if any such proceeding had not been instituted. The Guarantor waives all rights and benefits which might accrue to it by reason of any such proceeding and will be liable to the full extent hereunder, irrespective of any modification, limitation or discharge of the liability of the Borrower that may result from any such proceeding.

8. **Events of Default.** The occurrence of any of the following shall be an **"Event of Default"**: (i) any Event of Default (as defined in any of the Obligations); (ii) any default under any of the Obligations that does not have a defined set of "Events of Default" and

-3-

the lapse of any notice or cure period provided in such Obligations with respect to such default; (iii) the Guarantor's failure to perform any of its obligations hereunder and such failure shall continue for more than thirty (30) calendar days after written notice of such failure shall have been given by Bank to Lender; (iv) the falsity, material inaccuracy or material breach by the Guarantor of any written warranty, representation or statement made or furnished to the Bank by or on behalf of the Guarantor; or (v) the termination or attempted termination of this Guaranty. Upon the occurrence of any Event of Default, (a) the Guarantor shall pay to the Bank the amount due of the Obligations; or (b) on demand of the Bank, the Guarantor shall immediately deposit with the Bank, in U.S. dollars, all amounts due or to become due under the Obligations, and the Bank may at any time use such funds to repay the Obligations; or (c) the Bank in its discretion may exercise with respect to any collateral any one or more of the rights and remedies provided a secured party under the applicable version of the Uniform Commercial Code; or (d) the Bank in its discretion may exercise from time to time any other rights and remedies available to it at law, in equity or otherwise.

**9. Right of Setoff.** In addition to all liens upon and rights of setoff against the Guarantor's money, securities or other property given to the Bank by law, the Bank shall have, with respect to the Guarantor's obligations to the Bank under this Guaranty and to the extent permitted by law, a contractual possessory security interest in and a contractual right of setoff against, and the Guarantor hereby assigns, conveys, delivers, pledges and transfers to the Bank all of the Guarantor's right, title and interest in and to, all of the Guarantor's deposits, moneys, securities and other property now or hereafter in the possession of or on deposit with, or in transit to, the Bank or any other direct or indirect subsidiary of Bank, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding, however, all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to the Guarantor. Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of an Event of Default hereunder without any action of the Bank, although the Bank may enter such setoff on its books and records at a later time.

**10. Costs.** To the extent that the Bank incurs any costs or expenses in protecting or enforcing its rights under the Obligations or this Guaranty, including reasonable attorneys' fees and the costs and expenses of litigation, such costs and expenses will be due on demand, will be included in the Obligations and will bear interest from the incurring or payment thereof at the Default Rate (as defined in any of the Obligations).

**11. Postponement of Subrogation.** Until the Obligations are indefeasibly paid in full, the Guarantor postpones and subordinates in favor of the Bank and all rights which the Guarantor may have to (a) assert any claim against the Borrower based on subrogation rights with respect to payments made hereunder, and (b) any realization on any property of the Borrower, including participation in any marshalling of the Borrower's assets.

**12. Power to Confess Judgment. The Guarantor hereby empowers any attorney of any court of record, after the occurrence of any Event of Default hereunder, to**

-4-

appear for the Guarantor and, with or without complaint filed, confess judgment, or a series of judgments, against the Guarantor in favor of the Bank for the amount of the Obligations and an attorney's commission of up to 20% of such principal and interest added as a reasonable attorney's fee, and for doing so, this Guaranty or a copy verified by affidavit shall be a sufficient warrant. The Guarantor hereby forever waives and releases all errors in said proceedings and all rights of appeal and all relief from any and all appraisement, stay or exemption laws of any state now in force or hereafter enacted.

No single exercise of the foregoing power to confess judgment, or a series of judgments, shall be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void, but the power shall continue undiminished and it may be exercised from time to time as often as the Bank shall elect until such time as the Bank shall have received payment in full of the Obligations and costs. Notwithstanding the attorney's commission provided for in the preceding paragraph (which is included in the warrant for purposes of establishing a sum certain), the amount of attorneys' fees that the Bank may recover from the Guarantor shall not exceed the actual attorneys' fees incurred by the Bank.

       **13.**    **Notices.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and will be effective upon receipt. Such notices and other communications may be hand-delivered, sent by facsimile transmission with confirmation of delivery and a copy sent by first-class mail, or sent by nationally recognized overnight courier service, to the addresses for the Bank and the Guarantor set forth above or to such other address as one may give to the other in writing for such purpose.

       **14.**    **Preservation of Rights.** No delay or omission on the Bank's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will the Bank's action or inaction impair any such right or power. The Bank's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which the Bank may have under other agreements, at law or in equity. The Bank may proceed in any order against the Borrower, the Guarantor or any other obligor of, or collateral securing, the Obligations.

       **15.**    **Illegality.** In case any one or more of the provisions contained in this Guaranty should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

       **16.**    **Changes in Writing.** No modification, amendment or waiver of any provision of this Guaranty nor consent to any departure by the Guarantor therefrom will be effective unless made in a writing signed by the Bank, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on the Guarantor in any case will entitle the Guarantor to any other or further notice or demand in the same, similar or other circumstance.

**17. Entire Agreement.** This Guaranty (including the documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, between the Guarantor and the Bank with respect to the subject matter hereof; provided, however, that this Guaranty is in addition to, and not in substitution for, any other guarantees from the Guarantor to the Bank.

**18. Successors and Assigns.** This Guaranty will be binding upon and inure to the benefit of the Guarantor and the Bank and their respective heirs, executors, administrators, successors and assigns; provided, however, that the Guarantor may not assign this Guaranty in whole or in part without the Bank's prior written consent and the Bank at any time may assign this Guaranty in whole or in part.

**19. Interpretation.** Unless otherwise defined in this Guaranty, all initially capitalized terms used in this Guaranty shall have the respective meanings ascribed to such terms in the Agreement. In this Guaranty, unless the Bank and the Guarantor otherwise agree in writing, the singular includes the plural and the plural the singular; references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; and references to sections or exhibits are to those of this Guaranty unless otherwise indicated. Section headings in this Guaranty are included for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose. If this Guaranty is executed by more than one party as Guarantor, the obligations of such persons or entities will be joint and several.

**20. Indemnity.** The Guarantor agrees to indemnify each of the Bank, its affiliates, directors, officers, employees, agents, attorneys, shareholders and consultants and each legal entity, if any, who controls the Bank (the **"Indemnified Parties"**) and to hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation or preparation therefor, whether or not such Indemnified Party shall be designated a party thereto) which any Indemnified Party may incur or which may be asserted against any Indemnified Party as a result of the execution of or performance under this Guaranty; provided, however, that the foregoing indemnity agreement shall not apply to claims, damages, losses, liabilities, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements solely attributable to an Indemnified Party's gross negligence or willful misconduct or arose solely out of disputes between or among Indemnified Parties, as finally determined by a court of competent jurisdiction. If and to the extent that the foregoing obligations of Guarantor under this Section, or any other indemnification obligation of Guarantor hereunder or under any other documents evidencing, securing or guarantying the Obligations are unenforceable for any reason, Guarantor hereby agrees to make the maximum contribution to the payment and satisfaction of such obligations which is permissible under applicable Law. The indemnity agreement contained in this Section shall survive the termination of this Guaranty. The Guarantor may participate at its expense in the defense of any such claim.

-6-

**21. Governing Law and Jurisdiction**. This Guaranty has been delivered to and accepted by the Bank and will be deemed to be made in the State of Delaware. THIS GUARANTY WILL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF THE BANK AND THE GUARANTOR DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, EXCLUDING ITS CONFLICT OF LAWS RULES. The Guarantor hereby irrevocably consents to the exclusive jurisdiction of any state or federal court in the county or judicial district where the Bank's office indicated above is located; provided that nothing contained in this Guaranty will prevent the Bank from bringing any action, enforcing any award or judgment or exercising any rights against the Guarantor individually, against any security or against any property of the Guarantor within any other county, state or other foreign or domestic jurisdiction. The Guarantor acknowledges and agrees that the venue provided above is the most convenient forum for both the Bank and the Guarantor. The Guarantor waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Guaranty.

**22. WAIVER OF JURY TRIAL. THE GUARANTOR IRREVOCABLY WAIVES ANY AND ALL RIGHT THE GUARANTOR MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS GUARANTY, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS GUARANTY OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. THE GUARANTOR ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.**

*{remainder of page intentionally left blank}*

WL: #162829 v1 (3HN101!.DOC)
Bethany Court - M and C. McGreevy Guaranty

**The Guarantor acknowledges that it has read and understood all the provisions of this Guaranty, including the confession of judgment and waiver of jury trial, and has been advised by counsel as necessary or appropriate.**

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

WITNESS:

_____    _____ (SEAL)
                                    **MARK G. MCGREEVY**

WITNESS:

_____    _____ (SEAL)
                                    **CAROL E. MCGREEVY**

STATE OF DELAWARE )
                 ) SS
COUNTY OF SUSSEX )

On this, the ___ day of February, 2005, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared Carol E. McGreevy personally known to me and who executed the foregoing instrument for the purposes therein contained.

WITNESS my hand and seal the day and year aforesaid.

_____
Notary Public

My Commission Expires:

SUSAN M. BROWN
Commission Expires Nov. 4, 2005
Notary Public

-8-

WL: #162829 v1 (3HN101!.DOC)
Bethany Court – M and C. McGreevy Guaranty

## AFFIDAVIT AUTHORIZING CONFESSION OF JUDGMENT

STATE OF DEL.         )

                        ) ss.

COUNTY OF SUSSEX    )

BE IT REMEMBERED that on this $\underline{2}$ day of February, 2005 personally came before me, a notary public for the State and County aforesaid, Carol E. McGreevy, who being by me duly sworn according to law, stated:

1.      I am, as of the date hereof, a resident of the Commonwealth of Pennsylvania. My mailing address and the place where I would most likely receive mail is 109 Kelly Drive, Chadds Ford, Pennsylvania 19317.

2.      As set forth in that guaranty and suretyship agreement dated February $\underline{2}$, 2005 (the "Guaranty"), I hereby authorize Citizens Bank ("Bank") and its successors and assigns to confess judgment against me in the Superior Court of the State of Delaware in and for New Castle, Sussex or Kent Counties for up to $3,400,000.00 plus interest, costs and expenses.

3.      I have executed this Affidavit in connection with Bank's loan to Bethany Court, LLC, a Delaware limited liability company (the "Financing").

4.      The contacts with the State of Delaware in the transaction to which the Guaranty relates are (i) the Borrower is a Delaware limited liability company (ii) the Financing is secured by property located in the State of Delaware and (iii) the documents evidencing the Financing, including the Guaranty, are contracts entered into, under and pursuant to the laws of the State of Delaware, which I agreed are in all respects to be governed, construed, applied and enforced in accordance with the laws of the State of Delaware.

Carol E. McGreevy

SWORN TO AND SUBSCRIBED before me this /5 day of February, 2005.

Notary Public

SUSAN M. BROWN
Commission Expires Nov. 4, 2005
Notary Public

-10-

*Caldera Properties –*
*Nassau Grove, LLC*
*480/260 5813/0101*
*CV99*

## PROMISSORY NOTE

$6,500,000.00                                                                            July 15, 2005

**FOR VALUE RECEIVED, CALDERA PROPERTIES – NASSAU GROVE, LLC,** a Delaware limited liability company (the **"Borrower"**), with an address at 4260 Highway One, Suite 6, Rehoboth Beach, Delaware 19971, promises, under seal, to pay to the order of **CITIZENS BANK** (the **"Bank"**), in lawful money of the United States of America in immediately available funds at its offices located at 919 N. Market Street, Suite 800, Wilmington, Delaware 19801, or at such other location as Bank may designate from time to time, the principal sum of **SIX MILLION FIVE HUNDRED THOUSAND DOLLARS** ($6,500,000.00) (**"Loan"**) or so much thereof as shall have been advanced under that certain Loan Agreement dated of even date herewith between Borrower and Bank (as amended, modified or renewed from time to time, the **"Agreement"**), together with interest accruing from the date of initial advance on the outstanding principal balance hereof, as provided below:

1.      **Definitions**.

        a.      **"Agreement of Sale"** has the meaning ascribed to such term in the Agreement.

        b.      **"Business Day"** means any day which is neither a Saturday or Sunday nor a legal holiday on which commercial banks are authorized or required to be closed in Wilmington, Delaware.

        c.      **"Interest Period"** means initially, the period commencing as of the date of this Note (the **"Start Date"**) and ending on the numerically corresponding date one month later, and thereafter each one month period ending on the day of such month that numerically corresponds to the Start Date. If an Interest Period is to end in a month for which there is no day that numerically corresponds to the Start Date, the Interest Period will end on the last day of such month.

        d.      **"LIBOR Rate"** means relative to any Interest Period, the offered rate for delivery in two London Banking Days (as defined below) of deposits of U.S. Dollars which the British Bankers' Association fixes as its LIBOR rate and which appears on the Telerate Page 3750 as of 11:00 a.m. London time on the day on which the Interest Period commences, and for a period approximately equal to such Interest Period (i.e., the "30-day" LIBOR Rate). If the first day of any Interest Period is not a day which is both a (i) Business Day, and (ii) a day on which US dollar deposits are transacted in the London interbank market (a "London Banking Day"), the LIBOR Rate shall be determined in reference to the next preceding day which is both a Business Day and a London Banking Day. If for any reason the LIBOR Rate is unavailable and/or the Bank is unable to determine the LIBOR Rate for any Interest Period, the Loan shall accrue interest at the Prime Rate.

e.     **"Net Sales Proceeds"** means gross sales amount of a lot minus (i) reasonable closing costs, as determined by Bank and (ii) customary commissions.

f.     **"Prime Rate"** means the annual interest rate publicly announced by Bank from time to time as its prime rate. The Prime Rate is determined from time to time by Bank as a means of pricing some loans to its borrowers. The Prime Rate is not tied to any external rate of interest or index, and does not necessarily reflect the lowest rate of interest actually charged by Bank to any particular class or category of customers. If and when the Prime Rate changes, the rate of interest with respect to any amounts hereunder to which the Prime Rate applies will change automatically without notice to Borrower, effective on the date of any such change.

## 2.     Interest and Payment Terms.

a.     **Rate of Interest.** Interest on the outstanding principal amount of the Loan shall accrue at a rate equal to the LIBOR Rate for such Interest Period plus two hundred seventy five basis points (2.75%) per annum.

b.     **Payment Terms.** Commencing on September 1, 2005, and on the first day of each consecutive month thereafter, a payment shall be made equal to the sum of interest on the outstanding principal balance. Upon the occurrence of the Initial Closing (as defined in the Agreement of Sale), Borrower shall make a principal payment in the amount equal to the greater of (i) $28,700.00 per lot sold at the Initial Closing or (ii) $3,500,000.00 (**"Initial Closing Principal Payment"**). Upon the occurrence of the Second Closing (as defined in the Agreement of Sale), Borrower shall make a principal payment in the amount equal to the lesser of (i) the Net Sales Proceeds for all of the lots sold at the Second Closing or (ii) the entire unpaid principal amount hereof, together with accrued and unpaid interest thereon and all other amounts payable hereunder. The entire unpaid principal amount hereof, together with accrued and unpaid interest thereon and all other amounts payable hereunder, shall be due and payable in full on the earlier of (i) the occurrence of the Second Closing or (ii) July 15, 2007 (the **"Initial Maturity Date"**); provided, however, so long as (i) no Event of Default (as defined herein) or event which with the giving of notice or lapse of time, or both, would constitute an Event of Default has occurred, (ii) the Initial Closing has occurred, (iii) the Initial Closing Principal Payment has been received by Bank, (iv) Borrower has deposited the Additional Interest Reserve (as defined in the Agreement) in accordance with the Agreement and, if requested by Bank, has replenished the Additional Interest Reserve in an amount acceptable to Bank in its sole discretion and (v) by July 15, 2006, Borrower provided notice to Bank of its desire to have the maturity of the Loan extended, the Bank may extend the term of the Loan until July 15, 2008 (the **"Extended Maturity Date,"** together with the Initial Maturity Date, the **"Maturity Date"**).

If any payment under this Note shall become due on a day other than a Business Day, such payment shall be made on the next succeeding business day and such extension of time shall be included in computing interest in connection with such payment. The Borrower hereby authorizes the Bank to charge the Borrower's deposit account at the Bank for any payment when due hereunder. Payments received will be applied to charges, fees and expenses (including attorneys' fees), accrued interest and principal in any order the Bank may choose, in its sole discretion.

-2-

**3.** **Late Payments; Default Rate.** If the Borrower fails to make any payment of principal, interest or other amount coming due pursuant to the provisions of this Note within ten (10) calendar days of the date due and payable, the Borrower also shall pay to the Bank a late charge equal to five percent (5.0%) of the amount of such payment (the **"Late Charge"**). Such ten (10) day period shall not be construed in any way to extend the due date of any such payment. Upon maturity, whether by acceleration, demand or otherwise, and at the Bank's option upon the occurrence of any Event of Default (as hereinafter defined) and during the continuance thereof, this Note shall bear interest at a rate that shall be five percentage points (5.0%) in excess of the Interest Rate in effect from time to time under this Note but not more than the maximum rate allowed by law (the **"Default Rate"**). The Default Rate shall continue to apply whether or not judgment shall be entered on this Note. Both the Late Charge and the Default Rate are imposed as liquidated damages for the purpose of defraying the Bank's expenses incident to the handling of delinquent payments, but are in addition to, and not in lieu of, the Bank's exercise of any rights and remedies hereunder, under the other Loan Documents or under applicable law, and any fees and expenses of any agents or attorneys which the Bank may employ. In addition, the Default Rate reflects the increased credit risk to the Bank of carrying a loan that is in default. The Borrower agrees that the Late Charge and Default Rate are reasonable forecasts of just compensation for anticipated and actual harm incurred by the Bank, and that the actual harm incurred by the Bank cannot be estimated with certainty and without difficulty.

**4.** **Prepayment.** The principal amount of this Note may be prepaid in whole or in part at any time, and from time to time, without premium or penalty. Any prepayment shall include accrued and unpaid interest to the date of prepayment on the principal amount prepaid and all other sums due and payable hereunder.

**5.** **Other Loan Documents.** This Note is issued in connection with a Mortgage and Security Agreement given by Borrower to Bank of even date herewith (the **"Mortgage"**), the Agreement, and the other agreements and documents executed in connection therewith or referred to therein, the terms of which are incorporated herein by reference (as amended, modified or renewed from time to time, collectively the **"Loan Documents"**), and is secured by the property described in the Mortgage (the **"Property"**) and by such other collateral as previously may have been or may in the future be granted to the Bank to secure this Note.

**6.** **Events of Default.** The occurrence of any of the following events will be deemed to be an **"Event of Default"** under this Note: (i) the nonpayment of any principal, interest or other indebtedness under this Note when due and such nonpayment shall continue for more than five (5) Business Days after written notice of such failure shall have been given by Bank to Borrower; provided, however, Bank shall not be required to provide Borrower such notice or cure more than twice in any calendar year; (ii) the occurrence of any event of default or default and the lapse of any notice or cure period under any Loan Document or any other debt, liability or obligation to the Bank of any Obligor; (iii) the filing by or against any Obligor of any proceeding in bankruptcy, receivership, insolvency, reorganization, liquidation, conservatorship or similar proceeding (and, in the case of any such proceeding instituted against any Obligor, such proceeding is not dismissed or stayed within 45 days of the commencement thereof, provided that the Bank shall not be obligated to advance additional funds during such period); (iv) any assignment by any Obligor for the benefit of creditors, or any levy, garnishment,

-3-

attachment or similar proceeding is instituted against any property of any Obligor held by or deposited with the Bank; (v) the commencement of any foreclosure or forfeiture proceeding, execution or attachment against any collateral securing the obligations of any Obligor to the Bank; (vi) the entry of a final judgment against any Obligor and the failure of such Obligor to discharge the judgment within ten (10) days of the entry thereof; (vii) any Obligor ceases doing business as a going concern; (viii) the revocation or attempted revocation, in whole or in part, of any guarantee by any Guarantor; (ix) the death, incarceration, indictment or legal incompetency of any individual Obligor or the death, incarceration, indictment or legal incompetency of any individual member of Borrower; (xi) any representation or warranty made by any Obligor to the Bank in any Loan Document, or any other documents now or in the future evidencing or securing the obligations of any Obligor to the Bank, is false, erroneous or misleading in any material respect; or (xii) any Obligor's failure to observe or perform any covenant or other agreement with the Bank contained in any Loan Document or any other documents now or in the future evidencing or securing the obligations of any Obligor to the Bank, and the continuance of such failure for a period of thirty (30) days after written notice thereof shall have been given to such Obligor. As used herein, the term **"Obligor"** means any Borrower and any Guarantor, and the term **"Guarantor"** means any guarantor of the Borrower's obligations to the Bank existing on the date of this Note or arising in the future.

Upon the occurrence and the continuance of an Event of Default: (a) the Bank shall be under no further obligation to make advances hereunder; (b) if an Event of Default specified in clause (iii) or (iv) above shall occur, the outstanding principal balance and accrued interest hereunder together with any additional amounts payable hereunder shall be immediately due and payable without demand or notice of any kind; (c) if any other Event of Default shall occur, the outstanding principal balance and accrued interest hereunder together with any additional amounts payable hereunder, at the Bank's option and without demand or notice of any kind, may be accelerated and become immediately due and payable; (d) at the Bank's option, this Note will bear interest at the Default Rate from the date of the occurrence of the Event of Default; and (e) the Bank may exercise from time to time any of the rights and remedies available under the Loan Documents or under applicable law.

7.    **Power to Confess Judgment.  The Borrower hereby empowers any attorney of any court of record, after the occurrence of any Event of Default hereunder, to appear for the Borrower and, with or without complaint filed, confess judgment, or a series of judgments, against the Borrower in favor of the Bank or any holder hereof for the entire principal balance of this Note, all accrued interest and all other amounts due hereunder, together with costs of suit and an attorney's commission equal to twenty percent (20%) of such principal and interest (provided, however, that Bank shall only seek to recover those reasonable attorney's fees incurred by it from time to time), and for doing so, this Note or a copy verified by affidavit shall be a sufficient warrant.  The Borrower hereby forever waives and releases all errors in said proceedings and all rights of appeal and all relief from any and all appraisement, stay or exemption laws of any state now in force or hereafter enacted.  Interest on any such judgment shall accrue at the Default Rate.**

**No single exercise of the foregoing power to confess judgment, or a series of judgments, shall be deemed to exhaust the power, whether or not any such exercise shall be held by**

WL: #171520 v3 (3_CG03!.DOC)
Caldera/Nassau Grove – Promissory Note

any court to be invalid, voidable, or void, but the power shall continue undiminished and it may be exercised from time to time as often as the Bank shall elect until such time as the Bank shall have received payment in full of the debt, interest and costs. Notwithstanding the attorney's commission provided for in the preceding paragraph (which is included in the warrant for purposes of establishing a sum certain), the amount of attorneys' fees that the Bank may recover from the Borrower shall not exceed the actual attorneys' fees incurred by the Bank.

**8.      Right of Setoff.** In addition to all liens upon and rights of setoff against the Borrower's money, securities or other property given to the Bank by law, the Bank shall have, with respect to the Borrower's obligations to the Bank under this Note and to the extent permitted by law, a contractual possessory security interest in and a contractual right of setoff against, and the Borrower hereby assigns, conveys, delivers, pledges and transfers to the Bank all of the Borrower's right, title and interest in and to, all of the Borrower's deposits, moneys, securities and other property now or hereafter in the possession of or on deposit with, or in transit to, the Bank or any other direct or indirect subsidiary of Citizens Bank, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding, however, all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to the Borrower. Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of an Event of Default hereunder without any action of the Bank, although the Bank may enter such setoff on its books and records at a later time.

**9.      Miscellaneous.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing (except as may be agreed otherwise above with respect to borrowing requests) and will be effective upon receipt. Such notices and other communications may be hand-delivered, sent by facsimile transmission with confirmation of delivery and a copy sent by first-class mail, or sent by nationally recognized overnight courier service, to the addresses for the Bank and the Borrower set forth above or to such other address as either may give to the other in writing for such purpose. No delay or omission on the Bank's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will the Bank's action or inaction impair any such right or power. No modification, amendment or waiver of any provision of this Note nor consent to any departure by the Borrower therefrom will be effective unless made in a writing signed by the Bank. The Borrower agrees to pay on demand, to the extent permitted by law, all costs and expenses incurred by the Bank in the enforcement of its rights in this Note and in any security therefor, including without limitation reasonable fees and expenses of the Bank's counsel. If any provision of this Note is found to be invalid by a court, all the other provisions of this Note will remain in full force and effect. The Borrower and all other makers and indorsers of this Note hereby forever waive presentment, protest, notice of dishonor and notice of non-payment. The Borrower also waives all defenses based on suretyship or impairment of collateral. If this Note is executed by more than one Borrower, the obligations of such persons or entities hereunder will be joint and several. This Note shall bind the Borrower and its heirs, executors, administrators, successors and assigns, and the benefits hereof shall inure to the benefit of the Bank and its successors and assigns; provided, however, that the

-5-

Borrower may not assign this Note in whole or in part without the Bank's written consent and the Bank at any time may assign this Note in whole or in part.

This Note has been delivered to and accepted by the Bank and will be deemed to be made in the State where the Bank's office indicated above is located. **This Note will be interpreted and the rights and liabilities of the Bank and the Borrower determined in accordance with the laws of the State of Delaware, excluding its conflict of laws rules.** The Borrower hereby irrevocably consents to the exclusive jurisdiction of any state or federal court in the county or judicial district where the Bank's office indicated above is located; provided that nothing contained in this Note will prevent the Bank from bringing any action, enforcing any award or judgment or exercising any rights against the Borrower individually, against any security or against any property of the Borrower within any other county, state or other foreign or domestic jurisdiction. The Borrower acknowledges and agrees that the venue provided above is the most convenient forum for both the Bank and the Borrower. The Borrower waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Note.

**10.    WAIVER OF JURY TRIAL.  The Borrower irrevocably waives any and all rights the Borrower may have to a trial by jury in any action, proceeding or claim of any nature relating to this Note, any documents executed in connection with this Note or any transaction contemplated in any of such documents. The Borrower acknowledges that the foregoing waiver is knowing and voluntary.**

**The Borrower acknowledges that it has read and understood all the provisions of this Note, including the confession of judgment and the waiver of jury trial, and has been advised by counsel as necessary or appropriate.**

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

ATTEST:

CALDERA PROPERTIES – NASSAU
GROVE, LLC, a Delaware limited liability
company,
 by its manager
 Caldera Management Inc.,
 a Delaware corporation

Daniel B. McGreevy
Secretary

By: _____ (SEAL)
 Mark G. McGreevy
 President

-6-

## GUARANTY AND SURETYSHIP AGREEMENT

**THIS GUARANTY AND SURETYSHIP AGREEMENT** (this **"Guaranty"**) is made and entered into as of this 15th day of July, 2005, by **MARK G. MCGREEVY AND CAROL E. MCGREEVY** (collectively, the **"Guarantor"**), each with an address at 109 Kelly Drive, Chadds Ford, Pennsylvania 19317, to induce **CITIZENS BANK** (the **"Bank"**), with an address at 919 N. Market Street, Suite 800, Wilmington, Delaware 19801 to make, extend or renew loans, advances, credit, or other financial accommodations to **CALDERA PROPERTIES – NASSAU GROVE, LLC,** a Delaware limited liability company (the **"Borrower"**), and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged.

1.  **Guaranty of Obligations.** The Guarantor hereby guarantees, and becomes surety for, the prompt payment and performance of all loans, advances, debts, liabilities, obligations, covenants and duties owing by the Borrower to the Bank, of any kind or nature, present or future (including any interest accruing thereon after maturity, or after the filing of any petition in bankruptcy, or the commencement of any insolvency, reorganization or like proceeding relating to the Borrower, whether or not a claim for post-filing or post-petition interest is allowed in such proceeding), whether direct or indirect (including those acquired by assignment or participation), absolute or contingent, joint or several, due or to become due, now existing or hereafter arising; whether or not evidenced by any note, guaranty or other instrument, whether arising under any agreement, instrument or document, whether or not for the payment of money, whether arising by reason of an extension of credit, opening of a letter of credit, loan, equipment lease or guarantee, under any interest or currency swap, future, option or other interest rate protection or similar agreement, or in any other manner, whether arising out of overdrafts on deposit or other accounts or electronic funds transfers (whether through automated clearing houses or otherwise) or out of the Bank's non-receipt of or inability to collect funds or otherwise not being made whole in connection with depository transfer check or other similar arrangements; and any amendments, extensions, renewals or increases and all costs and expenses of the Bank (including reasonable attorneys' fees and expenses) incurred in the documentation, negotiation, modification, enforcement, collection or otherwise in connection with any of the foregoing (collectively, the **"Obligations"**). If an Event of Default (as defined herein) occurs, the Guarantor will pay the amount due to the Bank.

2.  **Nature of Guaranty; Waivers.** This is a guaranty of payment and not of collection and the Bank shall not be required, as a condition of the Guarantor's liability, to make any demand upon or to pursue any of its rights against the Borrower, or to pursue any rights which may be available to it with respect to any other person who may be liable for the payment of the Obligations.

This is an absolute, unconditional, irrevocable and continuing guaranty and will remain in full force and effect until all of the Obligations have been indefeasibly paid in full, and the Bank has terminated this Guaranty. This Guaranty will remain in full force and effect even if there is no principal balance outstanding under the Obligations at a particular time or from time

to time. This Guaranty will not be affected by any surrender, exchange, acceptance, compromise or release by the Bank of any other party, or any other guaranty or any security held by it for any of the Obligations, by any failure of the Bank to take any steps to perfect or maintain its lien or security interest in or to preserve its rights to any security or other collateral for any of the Obligations or any guaranty, or by any irregularity, unenforceability or invalidity of any of the Obligations or any part thereof or any security or other guaranty thereof. The Guarantor's obligations hereunder shall not be affected, modified or impaired by any counterclaim, set-off, deduction or defense based upon any claim the Guarantor may have against the Borrower or the Bank, except payment or performance of the Obligations.

Except for notices required hereunder or under any documents evidencing, securing or guarantying the Obligations, notice of acceptance of this Guaranty, notice of extensions of credit to the Borrower from time to time, notice of default, diligence, presentment, notice of dishonor, protest, demand for payment, and any defense based upon the Bank's failure to comply with the notice requirements of the applicable version of Uniform Commercial Code § 9-611 are hereby waived.   The Guarantor waives all defenses based on suretyship or impairment of collateral.

The Bank at any time and from time to time, without notice to or the consent of the Guarantor, and without impairing or releasing, discharging or modifying the Guarantor's liabilities hereunder, may (a) change the manner, place, time or terms of payment or performance of or interest rates on, or other terms relating to, any of the Obligations; (b) renew, substitute, modify, amend or alter, or grant consents or waivers relating to any of the Obligations, any other guaranties, or any security for any Obligations or guaranties; (c) apply any and all payments by whomever paid or however realized including any proceeds of any collateral, to any Obligations of the Borrower in such order, manner and amount as the Bank may determine in its sole discretion; (d) settle, compromise or deal with any other person, including the Borrower or the Guarantor, with respect to any Obligations in such manner as the Bank deems appropriate in its sole discretion; (e) substitute, exchange or release any security or guaranty; or (f) take such actions and exercise such remedies hereunder as provided herein.

3.    **Repayments or Recovery from the Bank.** If any demand is made at any time upon the Bank for the repayment or recovery of any amount received by it in payment or on account of any of the Obligations and if the Bank repays all or any part of such amount by reason of any judgment, decree or order of any court or administrative body or by reason of any settlement or compromise of any such demand, the Guarantor will be and remain liable hereunder for the amount so repaid or recovered to the same extent as if such amount had never been received originally by the Bank. The provisions of this section will be and remain effective notwithstanding any contrary action which may have been taken by the Guarantor in reliance upon such payment, and any such contrary action so taken will be without prejudice to the Bank's rights hereunder and will be deemed to have been conditioned upon such payment having become final and irrevocable.

-2-

**4. Financial Statements.** Unless compliance is waived in writing by the Bank or until all of the Obligations have been paid in full, the Guarantor will promptly submit to the Bank such information relating to the Guarantor's affairs (including but not limited to annual financial statements and tax returns for the Guarantor, as set forth in the Loan Agreement between Bank and Borrower, dated the date hereof) or any security for the Guaranty as the Bank may reasonably request.

**5. Financial Covenant.** Borrower, Guarantor and all other guarantors of the Obligations shall maintain combined unencumbered liquid assets (unrestricted cash and marketable securities) in a minimum amount of not less than (A) from the date hereof until December 31, 2005, $500,000.00 and (B) beginning December 31, 2005 and thereafter, $1,500,000.00. Guarantor and all other individual guarantors of the Obligations shall maintain a minimum combined net worth of not less than $40,000,000.00. The foregoing requirements shall be tested annually based on financial information requested by Bank.

**6. Enforceability of Obligations.** No modification, limitation or discharge of the Obligations arising out of or by virtue of any bankruptcy, reorganization or similar proceeding for relief of debtors under federal or state law will affect, modify, limit or discharge the Guarantor's liability in any manner whatsoever and this Guaranty will remain and continue in full force and effect and will be enforceable against the Guarantor to the same extent and with the same force and effect as if any such proceeding had not been instituted. The Guarantor waives all rights and benefits which might accrue to it by reason of any such proceeding and will be liable to the full extent hereunder, irrespective of any modification, limitation or discharge of the liability of the Borrower that may result from any such proceeding.

**7. Events of Default.** The occurrence of any of the following shall be an "Event of Default": (i) any Event of Default (as defined in any of the Obligations); (ii) any default under any of the Obligations that does not have a defined set of "Events of Default" and the lapse of any notice or cure period provided in such Obligations with respect to such default; (iii) the Guarantor's failure to perform any of its obligations hereunder and such failure shall continue for more than thirty (30) calendar days after written notice of such failure shall have been given by Bank to Lender; (iv) the falsity, material inaccuracy or material breach by the Guarantor of any written warranty, representation or statement made or furnished to the Bank by or on behalf of the Guarantor; or (v) the termination or attempted termination of this Guaranty. Upon the occurrence of any Event of Default, (a) the Guarantor shall pay to the Bank the amount due of the Obligations; or (b) on demand of the Bank, the Guarantor shall immediately deposit with the Bank, in U.S. dollars, all amounts due or to become due under the Obligations, and the Bank may at any time use such funds to repay the Obligations; or (c) the Bank in its discretion may exercise with respect to any collateral any one or more of the rights and remedies provided a secured party under the applicable version of the Uniform Commercial Code; or (d) the Bank in its discretion may exercise from time to time any other rights and remedies available to it at law, in equity or otherwise.

-3-

—

8. **Right of Setoff.** In addition to all liens upon and rights of setoff against the Guarantor's money, securities or other property given to the Bank by law, the Bank shall have, with respect to the Guarantor's obligations to the Bank under this Guaranty and to the extent permitted by law, a contractual possessory security interest in and a contractual right of setoff against, and the Guarantor hereby assigns, conveys, delivers, pledges and transfers to the Bank all of the Guarantor's right, title and interest in and to, all of the Guarantor's deposits, moneys, securities and other property now or hereafter in the possession of or on deposit with, or in transit to, the Bank or any other direct or indirect subsidiary of Bank, whether held in a general or special account or deposit, whether held jointly with someone else, or whether held for safekeeping or otherwise, excluding, however, all IRA, Keogh, and trust accounts. Every such security interest and right of setoff may be exercised without demand upon or notice to the Guarantor. Every such right of setoff shall be deemed to have been exercised immediately upon the occurrence of an Event of Default hereunder without any action of the Bank, although the Bank may enter such setoff on its books and records at a later time.

9. **Costs.** To the extent that the Bank incurs any costs or expenses in protecting or enforcing its rights under the Obligations or this Guaranty, including reasonable attorneys' fees and the costs and expenses of litigation, such costs and expenses will be due on demand, will be included in the Obligations and will bear interest from the incurring or payment thereof at the Default Rate (as defined in any of the Obligations).

10. **Postponement of Subrogation.** Until the Obligations are indefeasibly paid in full, the Guarantor postpones and subordinates in favor of the Bank any and all rights which the Guarantor may have to (a) assert any claim against the Borrower based on subrogation rights with respect to payments made hereunder, and (b) any realization on any property of the Borrower, including participation in any marshalling of the Borrower's assets.

11. **Power to Confess Judgment. The Guarantor hereby empowers any attorney of any court of record, after the occurrence of any Event of Default hereunder, to appear for the Guarantor and, with or without complaint filed, confess judgment, or a series of judgments, against the Guarantor in favor of the Bank for the amount of the Obligations and an attorney's commission of up to 20% of such principal and interest added as a reasonable attorney's fee, and for doing so, this Guaranty or a copy verified by affidavit shall be a sufficient warrant. The Guarantor hereby forever waives and releases all errors in said proceedings and all rights of appeal and all relief from any and all appraisement, stay or exemption laws of any state now in force or hereafter enacted.**

**No single exercise of the foregoing power to confess judgment, or a series of judgments, shall be deemed to exhaust the power, whether or not any such exercise shall be held by any court to be invalid, voidable, or void, but the power shall continue undiminished and it may be exercised from time to time as often as the Bank shall elect until such time as the Bank shall have received payment in full of the Obligations and costs. Notwithstanding the attorney's commission provided for in the preceding paragraph (which is included in the warrant for purposes of establishing a sum certain), the amount of attorneys' fees that the**

-4-

WL #171553 v2 (3_dd02".DOC)
Caldera Nassau Grove - M and C. McGreevy Guaranty

**Bank may recover from the Guarantor shall not exceed the actual attorneys' fees incurred by the Bank.**

12. **Notices.** All notices, demands, requests, consents, approvals and other communications required or permitted hereunder must be in writing and will be effective upon receipt. Such notices and other communications may be hand-delivered, sent by facsimile transmission with confirmation of delivery and a copy sent by first-class mail, or sent by nationally recognized overnight courier service, to the addresses for the Bank and the Guarantor set forth above or to such other address as one may give to the other in writing for such purpose.

13. **Preservation of Rights.** No delay or omission on the Bank's part to exercise any right or power arising hereunder will impair any such right or power or be considered a waiver of any such right or power, nor will the Bank's action or inaction impair any such right or power. The Bank's rights and remedies hereunder are cumulative and not exclusive of any other rights or remedies which the Bank may have under other agreements, at law or in equity. The Bank may proceed in any order against the Borrower, the Guarantor or any other obligor of, or collateral securing, the Obligations.

14. **Illegality.** In case any one or more of the provisions contained in this Guaranty should be invalid, illegal or unenforceable in any respect, the validity, legality and enforceability of the remaining provisions contained herein shall not in any way be affected or impaired thereby.

15. **Changes in Writing.** No modification, amendment or waiver of any provision of this Guaranty nor consent to any departure by the Guarantor therefrom will be effective unless made in a writing signed by the Bank, and then such waiver or consent shall be effective only in the specific instance and for the purpose for which given. No notice to or demand on the Guarantor in any case will entitle the Guarantor to any other or further notice or demand in the same, similar or other circumstance.

16. **Entire Agreement.** This Guaranty (including the documents and instruments referred to herein) constitutes the entire agreement and supersedes all other prior agreements and understandings, both written and oral, between the Guarantor and the Bank with respect to the subject matter hereof; provided, however, that this Guaranty is in addition to, and not in substitution for, any other guarantees from the Guarantor to the Bank.

17. **Successors and Assigns.** This Guaranty will be binding upon and inure to the benefit of the Guarantor and the Bank and their respective heirs, executors, administrators, successors and assigns; provided, however, that the Guarantor may not assign this Guaranty in whole or in part without the Bank's prior written consent and the Bank at any time may assign this Guaranty in whole or in part.

18. **Interpretation.** Unless otherwise defined in this Guaranty, all initially capitalized terms used in this Guaranty shall have the respective meanings ascribed to such terms in the Agreement. In this Guaranty, unless the Bank and the Guarantor otherwise agree in

-5-

writing, the singular includes the plural and the plural the singular; references to statutes are to be construed as including all statutory provisions consolidating, amending or replacing the statute referred to; the word "or" shall be deemed to include "and/or", the words "including", "includes" and "include" shall be deemed to be followed by the words "without limitation"; and references to sections or exhibits are to those of this Guaranty unless otherwise indicated. Section headings in this Guaranty are included for convenience of reference only and shall not constitute a part of this Guaranty for any other purpose. If this Guaranty is executed by more than one party as Guarantor, the obligations of such persons or entities will be joint and several.

19. **Indemnity.** The Guarantor agrees to indemnify each of the Bank, its affiliates, directors, officers, employees, agents, attorneys, shareholders and consultants and each legal entity, if any, who controls the Bank (the "**Indemnified Parties**") and to hold each Indemnified Party harmless from and against any and all claims, damages, losses, liabilities, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements of any kind or nature whatsoever (including all fees and charges of internal or external counsel with whom any Indemnified Party may consult and all expenses of litigation or preparation therefor, whether or not such Indemnified Party shall be designated a party thereto) which any Indemnified Party may incur or which may be asserted against any Indemnified Party as a result of the execution of or performance under this Guaranty; provided, however, that the foregoing indemnity agreement shall not apply to claims, damages, losses, liabilities, expenses, obligations, penalties, actions, judgments, suits, costs or disbursements solely attributable to an Indemnified Party's gross negligence or willful misconduct or arose solely out of disputes between or among Indemnified Parties, as finally determined by a court of competent jurisdiction. If and to the extent that the foregoing obligations of Guarantor under this Section, or any other indemnification obligation of Guarantor hereunder or under any other documents evidencing, securing or guarantying the Obligations are unenforceable for any reason, Guarantor hereby agrees to make the maximum contribution to the payment and satisfaction of such obligations which is permissible under applicable Law. The indemnity agreement contained in this Section shall survive the termination of this Guaranty. The Guarantor may participate at its expense in the defense of any such claim.

20. **Governing Law and Jurisdiction.** This Guaranty has been delivered to and accepted by the Bank and will be deemed to be made in the State of Delaware. **THIS GUARANTY WILL BE INTERPRETED AND THE RIGHTS AND LIABILITIES OF THE BANK AND THE GUARANTOR DETERMINED IN ACCORDANCE WITH THE LAWS OF THE STATE OF DELAWARE, EXCLUDING ITS CONFLICT OF LAWS RULES.** The Guarantor hereby irrevocably consents to the exclusive jurisdiction of any state or federal court in the county or judicial district where the Bank's office indicated above is located; provided that nothing contained in this Guaranty will prevent the Bank from bringing any action, enforcing any award or judgment or exercising any rights against the Guarantor individually, against any security or against any property of the Guarantor within any other county, state or other foreign or domestic jurisdiction. The Guarantor acknowledges and agrees that the venue provided above is the most convenient forum for both the Bank and the Guarantor. The Guarantor waives any objection to venue and any objection based on a more convenient forum in any action instituted under this Guaranty.

-6-

21. WAIVER OF JURY TRIAL. THE GUARANTOR IRREVOCABLY WAIVES ANY AND ALL RIGHT THE GUARANTOR MAY HAVE TO A TRIAL BY JURY IN ANY ACTION, PROCEEDING OR CLAIM OF ANY NATURE RELATING TO THIS GUARANTY, ANY DOCUMENTS EXECUTED IN CONNECTION WITH THIS GUARANTY OR ANY TRANSACTION CONTEMPLATED IN ANY OF SUCH DOCUMENTS. THE GUARANTOR ACKNOWLEDGES THAT THE FOREGOING WAIVER IS KNOWING AND VOLUNTARY.

*{remainder of page intentionally left blank}*

-7-

The Guarantor acknowledges that it has read and understood all the provisions of this Guaranty, including the confession of judgment and waiver of jury trial, and has been advised by counsel as necessary or appropriate.

**WITNESS** the due execution hereof as a document under seal, as of the date first written above, with the intent to be legally bound hereby.

WITNESS:

_____          _____(SEAL)
                                            **MARK G. MCGREEVY**

WITNESS:

_____          _____(SEAL)
                                            **CAROL E. MCGREEVY**

State of Delaware                )
                                 )   SS
COUNTY OF New Castle             )

On this, the 13th day of July, 2005, before me, the subscriber, a Notary Public in and for the State and County aforesaid, personally appeared Carol E. McGreevy personally known to me and who executed the foregoing instrument for the purposes therein contained.

WITNESS my hand and seal the day and year aforesaid.

C. LYNN ATZ                                 _____
NOTARY PUBLIC                               Notary Public
STATE OF DELAWARE
My Commission Expires Jan. 14, 2008

                                            My Commission Expires:

W.L. #171223 v2 (3_dd02!.DOC)
Caldera/Nassau Grove – M and C McGreevy Guaranty

AFFIDAVIT AUTHORIZING CONFESSION OF JUDGMENT

_State of Delaware_ )
                                    ) ss.
COUNTY OF _New Castle_ )

BE IT REMEMBERED that on this 13th day of July, 2005 personally came before me, a notary public for the State and County aforesaid, Carol E. McGreevy, who being by me duly sworn according to law, stated:

1. I am, as of the date hereof, a resident of the Commonwealth of Pennsylvania. My mailing address and the place where I would most likely receive mail is 109 Kelly Drive, Chadds Ford, Pennsylvania 19317.

2. As set forth in that guaranty and suretyship agreement dated July 15, 2005 (the "Guaranty"), I hereby authorize Citizens Bank ("Bank") and its successors and assigns to confess judgment against me in the Superior Court of the State of Delaware in and for New Castle, Sussex or Kent Counties for up to $6,500,000.00 plus interest, costs and expenses.

3. I have executed this Affidavit in connection with Bank's loan to Caldera Properties – Nassau Grove, LLC, a Delaware limited liability company (the "Financing").

4. The contacts with the State of Delaware in the transaction to which the Guaranty relates are (i) the Borrower is a Delaware limited liability company (ii) the Financing is secured by property located in the State of Delaware and (iii) the documents evidencing the Financing, including the Guaranty, are contracts entered into, under and pursuant to the laws of the State of Delaware, which I agreed are in all respects to be governed, construed, applied and enforced in accordance with the laws of the State of Delaware.

Carol E. McGreevy

SWORN TO AND SUBSCRIBED before me this 13th day of July, 2005.

_____

Notary Public

-10-

WL #171553 v2 (3_dd02! DGC)
Caldera Nassau Grove – M and C McGreevy Guaranty